**FRANKEL, ESTATE OF, In Re**

**FRANKEL v DEPT. OF TAXATION**

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 18272.   Decided Oct. 20, 1941.

David R. Hertz, Cleveland, for plaintiff-appellant.

Thomas J. Herbert, Atty. General, Columbus, and Wm. H. Middleton, Columbus, for defendant-appellee.

## OPINION

By SKEEL, J.

David Frankel and Harry Frankel, brothers, up to the time of the death of the latter were associated together in business and were for all practical purposes the sole owners of the capital stock of Frankelite Company. Each brother owned 1867½ shares of its capital stock, there being 4000 shares outstanding.

In 1935, the Frankel brothers, desiring to bind the one who should survive the other to purchase the interest of the first to die, in the company, at a price which should be fixed from year to year for the purpose of sustaining the value to the estate of the deceased brother's interest in such corporation, entered into a trust agreement between themselves and with The Cleveland Trust Company for the accomplishment of such purpose. By the terms of the agreement each brother was to take out a policy of insurance upon his own life in the sum of $50,-000.00. In each case the wife of the insured was named as beneficiary in such insurance policy. Each brother had the right to designate his own choice of beneficiary in the insurance policy written on his own life.

Each brother agreed to pay one-half of the total cost of both policies of insurance. The agreement further provided that each year the brothers were to file with the trustee a certificate setting forth their agreement as to the value per share of the stock in the Frankelite Company. The value so fixed was fixed solely for the purpose of carrying out the terms of the trust agreement and was to constitute the basis for determining the price which the survivor was to pay to the legal representative of the deceased brother

for the deceased brother's stock in said company. Upon the death of one of the brothers, the proceeds of the policy of insurance on his life should be paid to the deceased brother's beneficiary and this amount so paid, it was agreed, should constitute a credit on the purchase price of the stock. In carrying out the terms of the trust agreement, each deposited his respective stock holdings and the insurance policies provided for in the agreement, with the trustee, the stock being endorsed in blank. The brothers had agreed that the value of the stock for the purposes of the trust agreement, if either brother should die during the year, should be $95.01 per share. Harry Frankel came to his death by accident on July 12, 1937.

The proceeds of the life insurance policy were paid to his widow who was the beneficiary named in the policy and the other terms of the trust agreement carried out, so that the survivor, David Frankel, became the purchaser of the deceased brother's stock in the Frankelite Company for the net sum of $127,168.00. This amount was $50,-245.00 less than the agreed price fixed under the terms of the trust agreement which is accounted for by the fact that $50,245.00, the proceeds of the life insurance policy, was credited on the purchase price under the terms of the trust agreement.

The Probate Court found on the question of the extent to which the surviving brother is liable for the inheritance tax on this transaction, as follows:

"The court further finds, however, the transfer of said stock under the provisions of said trust agreement to a surviving brother, at a price less than its actual value, contemplates a gift in contemplation of death to the amount of the difference between the value of said stock and the price paid therefor, to the amount of $50,245.00."

It is contended on behalf of David Frankel, that the transfer to him by the trustee of the stock of the deceased

brother was not in any part a taxable succession, because it was (a), made during the decedent's lifetime in a bona fide effort to protect (the deceased's) estate from shrinkage after his death; (b), the transfer in fact and in law was a bona fide sale of the assets for which the transferee paid full value in money or money's worth.

The sections of the General Code which have application here are §5332 and 5332(a).

"Sec. 5332. Property on which tax levied. A tax is hereby levied on the succession to any property passing in trust or otherwise to or for the use of a person, institution or corporation, in the following cases:

1. * * *
2. * * *
3. When the succession is to property from a resident * * * by deed, grant, sale, assignment, or a gift made without a valuable consideration, substantially equivalent in money or money's worth to the full value of said property; (a), in contemplation of the death of the grantor, vendor, assignor or donor, or, (b) intended to take effect in possession or enjoyment at or after such death."

"Sec. 5332(a). Transfer of property to avoid taxes. The transfer of any property * * * if shown to have been made without a valuable consideration, **substantially equivalent in money or money's worth, to the full value of such property,** if so made within two years prior to the death of said transferer, shall, unless shown to the contrary, be deemed to have been made in contemplation of death, within the meaning of this title."

The tax provided for by these sections is a tax on the gratuitous succession to property, resulting from the death of the donor. It is not a sales tax, nor a gift tax, except when the gift is made in contemplation of death. We must, therefore, examine the facts to determine the character of the trans-

action, when considered in the light of the statutes.

The exceptor, David Frankel, and the deceased, Harry Frankel, were, as stated, the sole owners of the capital stock of the Frankelite Company. The company had always been under their management. It was what might be styled, a closed corporation. The stock could not be said to have a market value on the open market because of the limited number of people who would be interested in the corporation where its control and management was so completely confined within such narrow limits.

In entering into a trust agreement under these circumstances, the Frankel brothers sought by means of this contract and trust agreement to accomplish two objectives; (1), to see to it that in the event of the death of one brother, the surviving brother would become the purchaser of the deceased brother's stock for the purpose of protecting such surviving brother's stock holdings in the company. (2), to fix a purchase price for all the stock so that the widow of the deceased brother would not be at the mercy of the surviving brother, who in all probability would be the only one who would be interested in buying such a large block of stock in a closed corporation, and would, under such circumstances, be able to dictate what the price of the stock should be.

The value was therefore fixed by both brothers who, when agreeing to the price, knew that either might have to pay, or his legal representative sell, at the price so fixed. What more satisfactory method could have been devised to protect the interests of the widow of the first of the brothers to pass on, as in all reasonable probability the price thus agreed upon as the value to be paid by the surviving brother was much greater than could possibly be realized for the stock on the open market. In fact, the terms of the trust agreement clearly demonstrate that the price which the surviving brother should pay for the deceased brother's stock was not founded upon its true value in money or money's worth. This fact is shown by the following circumstances.

First, because the value placed upon such stock was limited by the agreement itself as being only "for the purposes of carrying out the terms of the agreement; Second, the cash surrender value of the policies of insurance as of the date of the death of the first brother to die, was to be added to the value of the shares in fixing the purchase price.

Third, in the event that the value of the shares so fixed under the terms of the trust agreement was less than the face value of the insurance deposited with the trustee on the life of the first brother to die, then even though the proceeds of such insurance was admittedly greater than the value of the stock, yet the beneficiary was to receive all of the proceeds from the insurance in payment for the stock which in that event was to become the property of the surviving brother, without the payment of other considerations, and,

Fourth, the value was to be determined each year and when so determined was to continue as such until again fixed by the contracting parties one year hence, and no consideration was to be given during the year to any change in the value of the stock in money, caused by an unusual success or misfortune, in the conduct of the business of the company or changes in general economic conditions.

It is contended by the state that the contract to sell such stock was, under the trust agreement, wholly executory; that is, that each brother retained all of the benefits to be realized as the owner of such shares of stock. For this reason it is argued that the sale of the stock not taking place until after the death of the first brother to die and if the sale was then made for less than its true value in money or money's worth the sale would have come within the provisions of §5332(a) **GC.**

The facts upon which this contention is founded are only partly true. Each of the brothers retained the right

648

to vote his stock and to receive the dividends declared thereon, but, on the other hand, he lost the right to pledge or sell his stock or any part thereof to any other person without the written consent of his brother. In fact, by the trust agreement, any additional stock that either brother should acquire was subject to the trust agreement in like manner as that owned when the agreement was signed.

The facts are undisputed therefore that the exceptor and the deceased, by this agreement, entered into a contract looking to the sale of the stock by the one who should pre-decease the other, to the one who should survive the other, and to protect the interests of each, title to the stock of both was placed in the trustee, reserving only the right of each to vote his stock and to receive dividends' credited thereon during life, passing all other rights of ownership to the trustee to be held subject to the trust agreement.

From the facts thus analyzed, we conclude that the transaction contemplated by the trust agreement was a contract to sell the shares of stock of the first brother to depart this life to the surviving brother, for the consideration therein provided for, title to be held in the trustee until the time of the death of the brother first to die.

We further find that the consideration given and agreed upon was legally sufficient and represented in law and fact the value of the stock in money or money's worth. The contract was made in good faith and was not an agreement to sell for less than the value of the stock, made in contemplation of death to avoid the payment of a succession or inheritance tax.

Even if there was no other consideration provided for by the agreement than the actual money paid by the exceptor to the estate, this would not mean that the amount credited to the obligation created by the trust agreement because of the proceeds of the insurance would constitute to that extent a taxable succession. What the statute provides for is a tax on the gratuitous succession to property coming about by the death of the owner.

The fact that the parties to the trust agreement provided a method of fixing the value of their holdings for their own purposes, would not be conclusive as to the true value in money or money's worth of such property for inheritance tax purposes. Would the State be content if such price was so fixed at a price admittedly far below its true value? We think not.

There being no evidence in the record of the true value in money or money's worth of the value of the stock here under consideration, other than the value fixed by the agreement of the parties, which consideration included not only money but other benefits and detriments which constituted good and legal consideration, we hold that the Probate Court was in error in assessing a succession tax upon the stock so transferred to the exceptor, to the amount of the insurance credit, and to that extent the judgment is reversed and final judgment entered for the exceptor.

LIEGHLEY, PJ., MORGAN, J., concur.